# Hightower *et al.* v. Ogletree.

*Action on a Promissory Note against a Surety.*

1. *Pleading and practice; rejoinders; how objection thereto should be raised.*—Rejoinders to replications should confess and avoid them, and are improper and insufficient when mere repetitions of pleas already filed; and objections to such insufficient rejoinders should be made by motion to strike and not by demurrer thereto.

2. *Principal and surety; notice when principal non-resident; discharge*

[Hightower *et al.* v. Ogletree.]

*of surety.*—The surety upon a promissory note, or other contract for the payment of money made in this State, is not discharged from liability because of the failure of the payee thereof, on notice in writing by such surety to sue the principal therein, as provided by statute (Code of 1886, § 3153), where the principal is a non-resident of the State at the time of the service of such notice.

3.  *Same; same; burden of proof.*—In an action against a surety on a promissory note, where the defendant claims release by failure of the payee to sue the principal to the term of the court following notice from the surety therefor (Code of 1886, § 3153), and it is shown that prior to the notice the principal had removed from the State and was then living in another State, the burden is upon the surety to prove that such principal had not abandoned his residence in this State, but intended to return.

4.  *Same; notice to sue must be in writing; charge to the jury.*—In an action against a surety on a promissory note, where the defendant claims release by the failure of the creditor to sue the principal to the first term of the court following notice from him therefor, (Code of 1886, § 3153), for such notice to be effective, it is necessary that it should have been in writing; and a charge which instructs the jury that "a verbal notice, or notice not in writing will not release the surety," and the fact that the ·surety requested the plaintiff to sue the principal verbally, will not release the surety, asserts a correct proposition, and is properly given.

5.  *Evidence; testimony as to contents of letter.*—On a trial of a case, a witness can not testify to the contents of a letter received by him as being a letter of the person whose name was signed thereto, but who could not write, without proving that the letter was from the person whose name was signed thereto, and written for him; and this is true, even though the contents of the letter may have been collateral to the main inquiry in the suit.

6.  *Pleading and practice; filing of plea non est factum; when properly refused.*—In an action upon a promissory note, where the defendant, who was sued as surety, has pleaded the general issue and a release, it is not error for the court to refuse to allow him, during the trial of the case, to file a plea of *non est factum.*

APPEAL from the Circuit Court of Talladega.

Tried before the Hon. LEROY F. BOX.

This action was brought by the appellee, T. E. Ogletree, against the appellant, T. M. Hightower, on January 2, 1892; and counted on a promissory note, which was payable on the 1st day of October, 1891. This note was executed by J. T. Griffin and the defendant, T. M. Hightower.

On July 24, 1893, on motion, the plaintiff was given leave to amend his complaint by adding the name of J.

T. Griffin as a party defendant, and summons and complaint were duly served upon him on January 18, 1894. The defendant filed two pleas, the substance of which is stated in the opinion. To the defendant's second plea, the defendant filed a replication, the substance of the averments of which is also stated in the opinion. To this replication the defendant demurred, assigning in many ways the ground that said replication was no answer to the plea. The court overruled the demurrer, and the defendants thereupon filed four rejoinders, the first of which was a denial of the allegations of the replication. The plaintiff demurred to the 2d, 3d and 4th, and the court sustained the demurrer to the 2d and 4th rejoinders, and overruled it as to the 3d.

The plaintiff introduced in evidence the note sued on, which was signed by J. T. Griffin with his mark, with no attesting witness, and by T. M. Hightower, who wrote his name. The defendant objected to the introduction of said note, on the ground that said Griffin signed his name thereto by his mark, and that there was no attesting witness. This objection was overruled, and the defendant duly excepted thereto.

After the introduction of this note in evidence, the defendants asked leave to file a plea of *non est factum*, denying that the defendant Griffin executed the note sued on. The court refused to allow the filing of said plea, and to this ruling the defendant duly excepted.

The defendant, T. M. Hightower, as a witness, testified that he signed the note sued on as a surety merely, and received no benefit whatever from the execution thereof; that on January 1, 1892, before this suit was brought, he notified the plaintiff to sue Griffin, stating in his notice that Griffin was the principal, and that he, Hightower, was his surety; and that when Griffin left the State in 1891, he owned property out of which the note could have been collected. This witness testified in response to plaintiff's question, on cross-examination, that during Griffin's absence he received letters from him, one postmarked Buchanan, Georgia, and that in one of the letters Griffin said: "I am in Buchanan, Georgia." The witness said that Griffin could not write, and the letters were not in his handwriting, and the only reason he supposed they were from Griffin was that the name of J. T. Griffin was signed to them. The defendant

[Hightower *et al.* v. Ogletree.]

moved to exclude all the testimony in reference to Griffin's letters, and the expression contained in said letter, upon the ground that it was not shown that Griffin wrote the letter, and that they were inadmissible.

There was evidence introduced tending to show that in the fall of 1891 Griffin moved from Alabama to Georgia, and that he did not return to Alabama until some time in December, 1892.

At the request of the plaintiff, the court gave to the jury the following written charges :

(1.) "If you believe from the evidence that the defendant, Hightower, signed the note sued on as surety, and that J. T. Griffin was the principal debtor or obligor on such note, and if you also believe from the evidence that said J. T. Griffin in the month of September, 1891, and before the note sued on was due, left Talladega county and left Hightower's mill in said county, where he had been residing, leaving his family consisting of a wife and several children at said Hightower's mill in Talladega county, and subsequently during the month of December, 1891, returned for a few days, and during such month of December removed his family to the State of Georgia, and stated at such time he moved his family that he was going to live at or near Buchanan, Georgia, and that he removed his family from Talladega county to some place in the State of Georgia before the notice in writing was given by the defendant, Hightower, to plaintiff to bring suit against said J. T. Griffin on or about the 2d day of January, 1892, and that on the 2d day of January, 1892, plaintiff brought suit against said T. M. Hightower, and that at such time, to-wit, the 2d day of January, 1892, said J. T. Griffin was not within the State of Alabama, but resided with his family in the State of Georgia, and that said J. T. Griffin was at such time living with his family in the State of Georgia, you must find your verdict for the plaintiff in this suit." (2.) "If you are reasonably satisfied with the evidence that said J. T. Griffin left Talladega county some time in the month of September or the early part of October, 1891, and went to some place in the State of Georgia and returned for a few days in December, 1891, and removed his family, consisting of a wife and four or five children, from Talladega county, and at the time of moving his said family stated that he was going to

[Hightower *et al.* v. Ogletree.]

move to his brother-in-law's at or near Buchanan, in the State of Georgia, and that he did move his family to the State of Georgia, and had so removed to the State of Georgia before the notice in writing was given by the defendant, Hightower, to the plaintiff to bring suit against said J. T. Griffin on the note here sued on, on or about the 1st or 2d day of January, 1892, as testified about in this case, and that at the time such notice was given and at the time this suit was brought against the defendant, Hightower, viz., on the 2d day of January, 1892, the said Griffin resided in the State of Georgia, you should find your verdict for the plaintiff, notwithstanding you may also believe from the testimony that said Griffin returned to the State of Alabama some time in the latter part of the month of January, 1892, and remained for a few days and also returned in the month of August, 1892, and remained a few days, and afterwards moved his family back to Talladega county in the month of December, 1892." (3.) "The court charges the jury that if the fact of the removal of J. T. Griffin from Talladega county is shown, and if you believe from the evidence that he did so remove from Talladega county and State of Alabama, prior to the first day of January, 1892, that he will be presumed to have abandoned his domicile, or residence, at said Hightower's mill in Talladega county, and the burden is upon the defendants to show that he had the intention of returning to such residence and never intended to abandon the same, or to change his domicile." (4.) "If you believe from the evidence that at the time the notice was given by defendant, Hightower, to the plaintiff to bring suit against J. T. Griffin, as testified about in this case, that said J. T. Griffin was a non-resident of Alabama, and had removed his family from Talladega county to some place in Georgia, and was then living in the State of Georgia, your verdict should be for the plaintiff in this cause for the amount of the note sued on and interest thereon, together with a reasonable attorney's fee, to be determined by you from the evidence." (5.) "The court charges the jury that if you are reasonably satisfied from the evidence that at the time the written notice was given to the plaintiff to bring suit against J. T. Griffin, as a principal, on or about the 2d day of January, 1892, as testified in this

case, said J. T. Griffin was residing in the State of
Georgia, and was not within the State of Alabama, at
the time this suit was brought against T..M. Hightower,
on the 2d of January, 1892, you must find your verdict
for the plaintiff, if you believe from the evidence that
the plaintiff made Griffin a party defendant to this
suit so soon as he learned of his return to Alabama.''
(6.) ''The court charges the jury that a verbal notice,
or notice not in writing, will not release the surety, and
if you believe from the evidence that T. M. Hightower
was the surety of J. T. Griffin on the note sued on, the
fact that T. M. Hightower requests the plaintiff to sue
said Griffin, verbally, before said Griffin removed his
family to Georgia, would not release said Hightower.''
(7.) ''If you believe from the evidence that before the
notice was given by Hightower to Ogletree, Griffin had
moved his family to Georgia and intended to reside in
Georgia, and at the time of moving his family from
Hightower's mill, in December, 1891, he stated to Mr.
Hawthorn that he was going to move to his brother-in-
law's at or near Buchanan, Georgia, and that at the
time such notice to bring suit was given and this suit
was brought Griffin was residing in Georgia, you should
find your verdict for plaintiff, if so soon as plaintiff
learned of his return to Alabama he made him a party
defendant to the suit.''    (8.) ''If you believe from the
evidence that before January 1, 1892, Griffin had moved
his family to Georgia, at or near Buchanan, in that
State, and was then living there at the time notice was
given to plaintiff to bring suit against him on or about
January 1st or 2d, 1892, and was residing there when
this suit was brought against defendant, Hightower, the
presumption of law from such facts is that such place in
Georgia was his residence, or domicile, at such time,
and the burden would be on the defendant, Hightower,
to prove to the reasonable satisfaction of your minds
that said Griffin did not reside at such place in Georgia
at such time, and had not abandoned his residence in
Alabama at such time, to wit, January 1st and 2d,
1892.''

To the giving of each of these charges the defendants
separately excepted; and also excepted to the court's re-
fusal to give the following charge requested by them:
''The court charges the jury that if they believe the

evidence in this case, they must find for the defendant, Hightower.''

There were verdict and judgment for the plaintiff. The defendants appeal, and assign as error the several rulings of the trial court to which exceptions were reserved.

KNOX, BOWIE & DIXON, for appellants.—1. All of the charges given at the instance of the plaintiff were erroneous, being incorrect statements of the law, as well as abstract, and in the first four charges the jury is instructed to find for the plaintiff, if they should believe from the evidence that the defendant Griffin had moved from the State at the time of the service of the notice and the bringing of the suit, and nowhere stating that they must further find that the plaintiff amended his complaint as soon as he learned of Griffin's return to the State of Alabama. This was the sole replication which was filed in this cause on which a trial was had. All of said charges were further erroneous because they ignored the issues made by the rejoinders filed in said cause, on which the trial was had.—*Steed v. Knowles*, 97 Ala. 574; *Battles v. Tallman*, 96 Ala. 403. The said charges were further erroneous in that they ignored the issues made by the pleadings.—Southern Rep. Dig. 2269.

2. The affirmative charge asked by the defendant Hightower should have been given, as it is shown without contradiction that he made out his special plea number two, and the plaintiff failed to prove the replication thereto, there being no evidence that the plaintiff's complaint was amended after the return of the said J. T. Griffin to the State of Alabama, and as soon as the plaintiff learned of the said Griffin's return to the State of Alabama. All the evidence on this subject was the testimony of the plaintiff Ogletree and he testified that as soon as he learned that Griffin and his family had come back to Talladega county he amended his complaint by joining Griffin as a party defendant; and it is necessary to prove the issues as made, or the party assuming the burden fails.—*Dexter v. Ohlander*, 89 Ala. 262; *Park v. Lide*, 90 Ala. 251. Secondly, on the ground that the rejoinders, numbered three and four were proven and there was no contradiction in the testimony

[Hightower *et al.* v. Ogletree.]

in regard to the same, and for this reason the affirmative charge should have been given.—*Carter v. Chambers*, 79 Ala. 223 ; *Sims v. Herzfeld*, 95 Ala. 145 ; *Cen. R. R. & B. Co. v. Ingram*, 95 Ala. 192.

WHITSON & GRAHAM, *contra*.—The ruling of the court in overruling defendant Hightower's demurrers to plaintiff's replication were correct, and the charges given by the court at plaintiff's request were free from error. If Griffin, the principal debtor, was not in the State of Alabama, when the notice to sue him was given plaintiff by defendant, Hightower, and had removed from this State and to the State of Georgia before such notice was given, plaintiff was not bound to sue Griffin, and Hightower was not discharged from liability on the note. The creditor is not obliged upon notice to prosecute or sue the principal who lives out of the State.—2 Brandt on Suretyship, § 607 ; *Lindsay v. Williams*, 17 Ala. 231 ; Baylies on Sureties & Guarantors, 230 ; *Conklin v. Conklin*, 54 Ind 289 ; *Phillips v. Riley*, 27 Mo. 386.

2. If the creditor and the surety live in one county, and the principal debtor lives in another, the creditor on notice by the surety to sue the principal is not obliged to go out of the county to sue the principal, and the surety is not discharged.—Brandt on Suretyship, § 607 ; *Lindsay v. Williams*, 17 Ala. 231; *Hughes v. Gordon* 7 Mo. 297.

3. The statute requires that after such notice in writing to sue the principal is given by the surety to the creditor, suit must be brought to the first term to which suit can be brought, and prosecuted with diligence according to the ordinary process of law.—Code of 1886, §§ 1773, 3153. The sureties' right to make the demand and his release on failure of the creditor to comply with the same is statutory. If compliance is impossible, the creditor is not bound to attempt it. The law never requires an impossible or useless thing.—*Stone v. Waite*, 88 Ala. 599. No question of the common law right of the surety to a discharge by negligence of the creditor in failing to collect the debt out of the principal after request to sue, arises in this case.—*Darby v. Berney Nat. Bank*, 97 Ala. 643.

4. If plaintiff was not bound to sue Griffin at the time the notice was given, Griffin having removed to and

then being in the State of Georgia, it was for the jury to pass on that fact. Then Griffin's subsequent return after the suit was commenced against Hightower, and any failure to sue him after such return would not discharge Hightower. As between plaintiff and defendant Hightower, their rights were fixed on the bringing of the suit as to all matters, duties, obligations or defenses existing prior thereto.—*McCrary v. Chase*, 71 Ala. 542.

5. It was competent to show the receipt of the letters by Hightower, and their post mark, also what was stated in one of the letters as to his residence, or where he was. A writing that was merely collateral may be testified to by a witness, without the production of the writing.—*Wollner v. Lehman*, 85 Ala. 275; *Howell v. Cardon*, 99 Ala. 100; *Allen v. State*, 79 Ala. 34; *Bulger v. Ross*, 98 Ala. 267.

HARALSON, J.—1. The first plea of the defendant was that of the general issue. The second, the legal sufficiency of which was not questioned, set up that the defendant, Hightower, was the surety of Griffin, the other maker of the note, and that he gave the notice authorized by statute (Code of 1886, § 3153) to the plaintiff, the payee of the note, to bring suit against the principal debtor, and that suit was not brought thereon to the first court to which it could be brought, after the receipt of such notice, and prosecuted with diligence according to the ordinary course of law, wherefore he pleaded his discharge from liability thereon.

To this plea the plaintiff replied, and defendant, Hightower, demurred to the replication. The replication may have set up more than was necessary, but, if the facts therein replied were true, they constitute a good excuse for not suing earlier than is alleged. The demurrer to the replication was, therefore, properly overruled. Thereupon said defendant filed rejoinders, numbered 2, 3 and 4 to the replication. Demurrers were interposed by the plaintiff to these rejoinders, and they were sustained, as is shown by the counter abstract, to the ones numbered 2 and 4, and overruled as to the third. An inspection of the third rejoinder discloses, that it is no more in substance than the 2d plea of defendant. The plaintiff should have objected to its filing, but when filed, instead of demurring to it, he should

have moved to strike it out, for being but a repetition of defendant's 2d plea. But, as this was not done, we must treat it as having no office to perform, which does not belong to the 2d plea. Rejoinders to replications should confess and avoid them, as is proper with replications to pleas which they profess to answer.—Stephens on Pl., 94; 1 Chit. on Pl., *651; *Lee v. DeBardelaben C. & I. Co.*, 102 Ala. 628; Code of 1886, § 2688.

2. The case appears, therefore, to have been tried upon the plaintiff's replication to the second plea. This replication sets up in substance, that at the time the plaintiff was notified by Hightower, the surety on the note, to sue Griffin, the principal, Griffin was not in the State of Alabama, but had removed to the State of Georgia, and never returned to Alabama until after this suit had been brought by plaintiff against said Hightower, who never gave plaintiff any notice in writing to bring suit against Griffin after his return to the State, and that as soon as the plaintiff learned that Griffin had returned to the State, and within the jurisdiction of the court, he amended his complaint, by joining the said Griffin as a party defendant thereto, at the July Term, 1893, of said court.

The main question here presented is, did the fact of the non-residence of the principal on the note excuse the plaintiff, its holder, from suing to the first term of the court, to which suit could have been brought after notice by the surety to sue. So far as we are aware, in construction of section 3153 of the Code, this question has not heretofore been directly before this court. Missouri and Indiana have statutes similar to ours, and it has been decided in those States. In *Phillips v. Riley*, 27 Mo. 386, it is held, that a surety on a promissory note who gives notice to the payee to commence suit immediately against the principal, who was a non-resident at the time, is not exonerated from liability by a failure of the payee to commence suit within thirty days after notice,—as required by the statute; that the surety by his notice to sue could not compel the plaintiff to go out of the State to sue the principal. To the same effect are *Rowe v. Buchtel*, 13 Ind. 381, and *Conklin v. Conklin*, 54 Ind. 289. In the latter case, the court say, "that the rule which makes it unnecessary for the creditor to go out of the State to sue the principal, on notice from the

surety, works no hardship on the surety. The latter may at once pay the debt, and follow the principal wherever he may go, and enforce his remedy against him.

Section 1778 of the Code provides, as to contracts for the payment of money, where the amount due exceeds $100, to charge the indorser or assignor, that suit must be brought against the maker to the first court to which suit can properly be brought after making the indorsement or assignment. One of the excuses for not suing as required by that section is, when the maker has no known place of residence in the State.—Code of 1886, § 1780. The law as contained in this section has existed substantially since 1828, (Clay's Dig. 383, §§12, 14) ; and is to be found in the Codes subsequent to that time. In construing this section, this court long ago held, that the holder of the note was excused from bringing the suit to charge the indorser, when the maker had removed from the State and remained during the period when he might be legally sued.—1 Brick. Dig. 279, §§ 381, 382, 383. The effect of the Code, as held, was to render the liability of the assignor primary and absolute, whenever the maker has no known place of residence in the State, at the maturity of the note.—*Goggins v. Smith*, 35 Ala. 683. Before that, in *Lindsay v. Williams*, 17 Ala. 231, it had been said by DARGAN, C. J. : "We should hold, if an indorser did not know in what county the maker resided, and could not by diligent inquiry ascertain the county of his residence in time to sue to the first court, that this would be a sufficient excuse for failing to sue to the first term, and I think it may be well questioned whether it would not dispense with the necessity of a suit altogether, even if the holder by inquiry should afterwards ascertain the residence of the maker." It was further held, that the extraordinary process of attachment would not be necessary in such case.—*Woodcock v. Campbell*, 2 Port 456, 463.

Section 3153 of the Code of 1886 has had substantial existence since 1821.—Clay's Dig. p. 532, § 6. The requirement of the enactment at first was, that the holder of the note should commence suit thereon, not specifying that the action should be against the principal, and if suit were not commenced according to notice within a reasonable time, the surety was discharged. In the sub-

sequent Codes the original enactment is amended so as to require the creditor, or any one holding the beneficial interest in the contract, on notice from the surety, to bring suit thereon against the principal debtor, and if not brought pursuant to notice, to the first court to which suit can be brought after the receipt of such notice, &c., the surety shall be discharged. The original act, as it appeared in Clay's Digest, is an older statute than the other act of 1828, touching the exoneration of assignors or indorsers, if suit is not commenced to the first court after the maturity of the debt. The said enactment of 1828 had received construction by this court as above shown. Indorsers are *quasi* sureties, and it is fair to presume, that the purpose of the legislature, in the amendment of the act of 1821,—as we find it first, so far as we are aware, in the Code of 1852, and in the subsequent Codes unchanged in this particular,—was to put sureties proper on as favorable a basis as indorsers or assignors had been placed by the said act of 1828, brought forward in the different Codes, and now constituting said section 1778 of the Code of 1886. The construction that had been given to said section 1778, therefore, applies to said section 3153. The debt of the principal is in law equally the debt of the surety, and under neither of these statutes should the surety be released, unless the principal has failed to perform the duty required of him to the surety, of suing in the manner required by the statutes. There is nothing in these statutes which prevents suits against the indorser or assignor in the one case, and the surety in the other, and obtaining judgment, unless plaintiff has failed to sue the maker or principal debtor as the statute requires. If he has so failed, that would be a good plea in bar. It would seem, in the adoption of the statute we construe,—section 3153 of the Code,—the purpose of the legislature is fully met, in the discharge of the surety, if the holder of the note, on notice to him by the surety to institute and prosecute suit against the principal in the manner required by the statute, fails or refuses to do so, in the absence of one of the statutory excuses for non-compliance with the requirements of the notice in writing. If one of those excuses exists, the holder may decline to sue as required, and the case stands, as for all else, as though no statute on the subject existed. If then Griffin was a non-resident

of the State, at the time the notice was given to the holder by the defendant to sue him, this operated as an excuse for not suing him to the first court thereafter, and the liability of the surety on the note, as for this matter, became primary and absolute, for which judgment might have been rendered against him.

3. The 1st, 2d and 4th charges requested by plaintiff, and given, were free from error. The abstract shows, that the complaint was amended by making J. T. Griffin a party defendant.

The 3d and 8th charges have reference to the burden of proof of residence, and assert correct principles. The 5th and 7th were free from error and properly given.

The 6th charge was also free from error. The statute requires the notice to sue to be in writing.

4. The letters which Hightower said he received from Griffin in Georgia, and the contents of which the court allowed him to prove, on his cross-examination by plaintiff, against the objection of defendant, were not shown to have been written by Griffin. For aught appearing, they may have been mere forgeries. It was certainly not competent to speak of the contents of these letters, collateral though they were, to the main inquiry, without proving that Griffin wrote them. It was shown that the letters were not in his handwriting, that he could not write, and the only reason witness had for supposing they were written by him was, that his name was signed to them.

There was no error in refusing to allow Griffin to file, at the time he proposed to do so, an additional plea of *non est factum.—State v. Tutwiler*, 57 Ala. 113.

There are other errors assigned on exceptions reserved to the admission and exclusion of evidence, which appear to be without merit, but, even if meritorious, are not insisted on in argument, and were, therefore, waived. We deem it unnecessary to notice them.

For the errors indicated, the judgment of the court below is reversed and the cause remanded.

Reversed and remanded.