## FOX v. IRELAND et al.

(Supreme Court, Appellate Division, First Department. January 5, 1900.)

FALLING BUILDINGS—RELIANCE OF ANSWER OF ARCHITECT.

A building having fallen by reason of a defective foundation, injuring a workman therein, the owner, to be exonerated through the architect, must show that he was skilled and competent, that he relied on him both for preparation of plans and superintendence and inspection of the work, and that he did not interfere with him in the discharge of his duties.

Appeal from trial term, New York county.

Action by William H. Fox against John B. Ireland, impleaded with others. From judgment dismissing the complaint as to said Ireland, and from order denying motion for new trial, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, McLAUGHLIN, and INGRAHAM, JJ.

Charles J. Patterson, for appellant.
Ira D. Warren, for respondents.

PATTERSON, J. This appeal is taken by the plaintiff from a judgment in favor of the defendant John B. Ireland, entered upon a dismissal of the complaint (as to Mr. Ireland) in an action to recover damages for personal injuries. The accident which resulted in the grievous injury sustained by the plaintiff was due to the insecurity of the foundation of one of the middle row of columns which supported a large structure being built upon the defendant's land. There can be no doubt of the facts connected with the cause of the accident. On the middle line of the building, at equal intervals of space, were five cast-iron columns running from front to rear. The weight of the center of the superstructure—a building some eight stories high—bearing upon one of these columns drove it through the insufficient foundation upon which it rested, and caused the interior of the building, in which the plaintiff was working, to fall. The column was driven some 7½ feet into the earth. The defendant Ireland had, as owner, entered into a contract with one Parker for the construction of the building. The foundations in the cellar under the supporting columns were required to be of concrete, stone, and iron. By the terms of the contract, the concrete was to be 18 inches thick and 9 feet 6 inches square. Upon that was to be laid a slab of Greenwich stone 1 foot thick and 6 feet square, and upon the stone an iron plate 28 inches square and about 3½ inches in thickness. On each plate a column was to rest. The building was to be constructed ac-

cording to plans and specifications prepared by one Behrens, named in the contract as architect. These plans were approved by the building department. There is evidence to show that the architect also was the superintendent of the work for the defendant, and that he (the architect) gave instructions to Parker's foreman to make the concrete bed only 12 inches thick, instead of 18. The concrete bed under the column that gave way was laid partly on earth, but it rested partly on the wall of an old cistern, the existence of which seems to have been unknown to any one when the plans were prepared or the foundations for the columns located on the plans. That part of the foundation of the column built over this cistern wall met with greater resistance in settling than the rest of it, and, as a consequence of the excessive weight upon the insufficient foundation, the building fell at this, its weakest point, carrying the plaintiff down with it in its fall. The contract with Parker contained the following provision:

"No concrete shall be laid in trenches until same has been examined by the architect, as concrete must not be laid on a disturbed bottom. No finished concrete work will be accepted unless same has been approved by the architect before being covered over or built upon."

The trenches for the foundations of the columns were dug by one Garry under a separate contract made with Mr. Ireland, but it would seem that all of that work was to be done under the superintendence and inspection of Behrens, the architect. The evidence tends to show that the original plan of the foundations for the columns to support the superstructure was defective. At all events, it fairly establishes that the alteration in the depth of the concrete from 18 to 12 inches was negligent construction. It does not appear satisfactorily that Behrens inspected the work of laying the foundations for the columns, although Parker's foreman swears that he received his instructions from Behrens as to the depth or thickness of the concrete as it was actually laid. Although Parker was an independent contractor, Mr. Ireland would still be liable, unless he had discharged the duty which devolved upon him of taking such means, either by himself or through others, as would make the foundations of the building safe for the plaintiff and others working on the superstructure. If Mr. Ireland had undertaken to prepare the plans for this building, and to superintend its construction, and by reason of defects in the plans, or of carelessness in construction, a person lawfully upon the building, or employed therein, had been injured, the liability of the owner plainly would have been made out, as was held in Pitcher v. Lennon, 12 App. Div. 356, 42 N. Y. Supp. 156; and the fact that the plans were passed upon and approved by the department of buildings of the city of New York would not have relieved the owner from responsibility, as was also held in the same case. But where an owner employs a competent architect to draw plans and superintend the construction of a great building, such as that which the defendant Ireland was engaged in erecting, we think he discharges his duty if he commits the whole subject to a fully-qualified architect, and does not in any way interfere with, direct, or control him. We are of the opinion that

this case is to be disposed of, as the proofs are now before us, by considerations relating to the competency of the architect and the right of the defendant Ireland to rely upon the skill and fidelity of the architect. The cause of the falling of the building was undoubtedly the insufficient foundation for the column. It was built partly over the old cistern wall, on disturbed ground, contrary to the requirements of the contract. The architect could have prevented or corrected that. Had the plan been different, or had no alteration in the depth of the concrete as called for by the plans been made, or had the superintendence of the work been more efficient, the accident would not have occurred. The owner would have had the right to rely upon plans drawn by a skillful architect, because the work of devising and providing for the erection of a great building is a matter which requires special, and, to some extent, scientific, knowledge. One of the engineering witnesses for the plaintiff said that it requires a man who has had experience or education to enable him to apply the principles of engineering, in order to calculate the adverse strains in metals or building material. An architect is the recognized authority in such matters. In the case of Burke against this same defendant (26 App. Div. 488, 50 N. Y. Supp. 369), it was held, in an action growing out of this same accident, that an owner of land who has employed a competent architect to design a building to be erected thereon, and has fairly committed the subject-matter to him, is not liable to an employé of the contractors, who have agreed with the owner to construct the building according to design, for faults or defects in it of which the owner neither knew nor should have known, provided the defects in the design did not proceed from his interference or direction; and it was further held that, although the owner is prima facie liable, where a building is inherently defective or dangerous, he may escape the liability upon the ground that he employed a competent architect. There is evidence here tending to show that the original plans were faulty, and quite conclusive proof that the bed of 12 inches of cement was altogether inadequate for safety, especially as it was laid. We do not overlook the fact that the cement was laid on a disturbed bottom, nor the contention of the appellant that it was negligence of the owner in failing to provide an undisturbed bottom. The contract prohibited the use of a disturbed bottom, and the owner had carefully guarded against such use. He had, in effect, prohibited it, and had stipulated that concrete work would not be accepted unless approved by the architect before being covered or built upon. The direct responsibility of seeing to the performance of that part of the contract was with the architect. If he were negligent in the discharge of his duty in the superintendence of the work, a question may arise which we do not feel called upon to decide now, in view of the main consideration which calls for a reversal of the judgment.

Without adverting to other matters elaborately discussed by counsel, we think the nonsuit was improperly directed, because the defendant Ireland is not exonerated from liability, it not being shown that he employed a skilled and competent architect, and that he relied upon him both for the preparation of plans and the superintendence and

inspection of the work, and that he did not interfere with the architect in the discharge of the duties the latter assumed to perform for the owner. The defendant's position is defective in that there is nothing in the record to inform us who Mr. Behrens, the architect, was, or whether he was competent, or what education, knowledge, or experience he had, or what his capacity was to deal with so large and important a subject as the planning and erection of this great building for Mr. Ireland. The owner is called upon to show further that he did not control, direct, or interfere with the architect in any manner. It will not suffice to say that Mr. Behrens was a skilled architect because Mr. Ireland considered him such, or the architect represented himself to be such, as by signing the plans; nor is it enough for the defendant to say that he relied upon the approval of the plans by the building department as a certificate of capacity or sufficiency of the architect he employed. For the want of evidence to show that Mr. Ireland could rightfully rely upon the architect he employed, the judgment and order must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

O'BRIEN, INGRAHAM, and McLAUGHLIN, JJ., concur. VAN BRUNT, P. J., concurs in result.